90 So.2d 791

**ELYSIAN HOMES, Inc.**

**v.**

**Ad Given DAVIS.**

No. 42394.

Nov. 5, 1956.

Leopold Stahl, New Orleans, for appellant.

Robert G. Hughes, New Orleans, for appellee.

HAMITER, Justice.

Elysian Homes, Inc. instituted this suit to obtain reformation of its written contract with Ad Given Davis and to recover from the latter $3,142.50, an amount allegedly due by him under the agreement when and as reformed.

After trial of the merits the district court dismissed the suit and also rejected a reconventional demand of the defendant.

Plaintiff is appealing. Defendant has answered the appeal, praying that his reconventional demand be sustained.

From the record it appears that previous to the confection of the written contract sought to be reformed the defendant Ad Given Davis (on the one hand) and Pailet Brothers (on the other hand) owned all of the stock of the plaintiff corporation in the proportion of one-half by each and negotiations through numerous conferences were undertaken looking toward a purchasing by one of the parties of the stock interest of the other. For the purpose of providing a basis for determining who would be the purchaser it was mutually stipulated that plaintiff corporation's accountant would compile figures disclosing the net corporate interest of each of the two parties, particularly the indebtedness which each owed to Elysian Homes, Inc. As to Davis the compilation was to include also the debts so owed by any corporation wholly owned by him.

In due course the figures were compiled by the accountant, in a document styled "Special Report", and were submitted to the parties. They reflected a total indebtedness due by Davis and his wholly owned corporations to Elysian Homes, Inc. in the amount of $34,872.28. As a result of the report Davis decided and agreed to sell his stock, although he was not eager to do so. Then followed the confection of the written contract sought to be reformed herein, it having been prepared by the attorney for plaintiff and signed on June 1, 1951.

In part such instrument recited: "It is hereby agreed that Elysian Homes, Inc., will purchase and does by these presents agree to purchase from Ad·Given Davis

and said Ad 'Given Davis will sell and does hereby agree to sell to the said Elysian Homes, Inc., all of the shares of stock which said Davis owns in the said Elysian Homes, Inc. for the price and sum of Two Hundred and Fourteen Thousand Seven Hundred and Eight and 63/100 ($214,708.-63) Dollars, subject to the payment by said Davis to the said Elysian Homes, Inc., of the net indebtedness due by him or his interest in the sum of Thirty-Four Thousand Eight Hundred Seventy-Two and 28/100 ($34,872.28) Dollars * * *."

On July 6, 1951 full settlement under the written contract occurred. Davis surrendered his stock in plaintiff corporation and received therefor the agreed sale price less the specifically recited indebtedness of $34,872.28 due by him or his interest (meaning his wholly owned corporations).

Subsequently, on November 28, 1951, the accountant for plaintiff notified its attorney in writing that an inadvertent error had been committed in preparing the Special Report on which the above mentioned agreement and settlement were based, the compilation having failed to take into consideration a certain indebtedness due by Ad Given Davis, Inc. (a corporation wholly owned by defendant). He suggested in the letter that "there must be paid by Ad Given Davis, Inc., and/or Ad Given Davis, to Elysian Homes, Inc., an additional amount of $3,142.50."

When Davis refused to pay that additional sum plaintiff instituted proceedings against Ad Given Davis, Inc. in Jefferson Parish (the domicile of the latter corporation) to recover it. The suit was dismissed on a plea of prescription, and no appeal was taken from the judgment.

Thereafter, plaintiff resorted to this reformation action, it praying that the indebtedness of Davis as specifically recited in the June 1, 1951 contract be increased to the extent of $3,142.50 and that judgment be rendered in its favor for that amount.

Well established in our jurisprudence are the following principles relating to actions of this kind: " 'When parties reduce their contracts to writing, and when the terms of the writing exhibit no uncertainty or ambiguity as to the nature, the object, and the extent of the agreement, it is presumed that the writing expresses the true and complete undertaking of the parties. * * * Equity may reform * * * even contracts unambiguous on their face on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but to support relief there must be clear proof of the antecedent contract and of the error in committing it to writing.' " Rodgers v. S. H. Bolinger Co., Ltd., 149 La. 545, 89

So. 688, 690; Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65. See also Poor v. Hemenway, 221 La. 770, 60 So.2d 310.

The record in this cause does not disclose any antecedent agreement different from the contract evidenced by the instrument of June 1, 1951 in which Davis undertook to pay only obligations totaling a specified sum. In fact, during the course of the trial plaintiff's attorney stated: "* * * I am not claiming any prior agreement."

Of course, it seems certain that during the negotiations for the stock settlement the request made to the accountant for a compilation of figures contemplated a listing of the entire indebtedness of Davis and his wholly owned corporations to Elysian Homes, Inc. But it is not at all certain that Davis would have ultimately agreed to sell his stock if the submitted report had reflected more liabilities than those shown therein.

Since plaintiff has completely failed to prove that there was an antecedent agreement different from the contract signed by the parties we conclude, as did the trial judge, that this suit is not well founded.

The reconventional demand in the amount of $3,200 is for salary allegedly due to defendant as president of plaintiff corporation from January 1, 1951 to July 6, 1951. In our opinion it was also correctly dismissed. No evidence was adduced to show that there was any agreement to pay such salary; nor do we find that it might have been due equitably on a quantum meruit basis.

For the reasons assigned the judgment of the district court rejecting both the main and the reconventional demands is affirmed at appellant's costs.